IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL CASE NO. |
| v. | 1:07-CR-0195-RWS-JFK |
| ADAM WAYNE LEBOWITZ, | |
| Defendant. | |

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Pending before the court is Defendant Adam Wayne Lebowitz's motion [Doc.

54] to suppress evidence seized as the result of the execution of a search warrant issued

in the Magistrate Court of DeKalb County, Georgia, for Defendant's residence located

at 3408 Mountain Drive, Decatur, Georgia.[1]  Defendant contends that the evidence

seized from his residence should be suppressed because the warrant was over broad

allowing a general search and a search for items for which there was no probable

cause, because the warrant lacked probable cause for a search of his residence, and

---

[1]By a separate Report and Recommendation filed under seal, the court addresses
Defendant's motion to dismiss the indictment for Government misconduct before the
grand jury and to compel production of grand jury material and Defendant's motion
to dismiss the indictment for Government misconduct regarding the disclosure of
certain information infecting a fair trial.

because the affidavit for the warrant contained material and reckless falsehoods and omissions. Defendant further contends that the good faith exception to the exclusionary rule is not applicable to this search warrant. [Id.]. The Government responded[2] opposing the motion to suppress asserting that there was probable cause for the search of Defendant's residence and for the items listed in the warrant which was over broad, that Defendant did not establish material and reckless falsehoods or omissions in the affidavit for the warrant, and that, in any event, the good faith exception to the exclusionary rule applies to this warrant. After consideration of the arguments of the parties and of binding and persuasive legal authority, the court finds that Defendant's motion to suppress evidence should be denied.

## I.    Background Facts

On November 2, 2006, at approximately 6:54 p.m., B.A. Suber, Coweta Sheriff Office, obtained a search warrant from a DeKalb County Magistrate for 3408 Mountain Drive, Decatur, Georgia, based on "probable cause to believe that the following crimes(s)" have been committed:  enticing a child for indecent purposes,

---

[2]The Government's response is filed under seal due to the fact that the response also addresses Defendant's two motions to dismiss for Government misconduct. Accordingly, the court will not reference a docket number for the Government's response.

O.C.G.A. § 16-6-5, and child molestation aggravated injury, O.C.G.A. § 16-6-4. The warrant allowed the officer to search for various "property, items, articles, [and] instruments" which "constitute evidence connected with the foregoing listed crimes" and, as identified by the magistrate issuing the warrant, are:

> designed for use in the commission of the crime(s) herein described.
> intended for use in the commission of the crime(s) herein described.
> has/have been used in the commission of the crime(s) herein described.
> contraband, the possession of which is unlawful.
> tangible evidence of the commission of the crime(s) set forth above. . . .

[Government's Response, Attachment A].

> The officer was specifically authorized to search for:

> pornographic materials(s), computer(s), computer programs[,] external storage units, cables components (mouse, key board, scanner, monitor, printer, hard drive, CD rom drive, DVD rom drive, modem)[,] CD's, floppy disk[,] any "internet" service provider or online service, camera(s), video equipment, any photographic form, slides, prints, negatives, video tapes, motion pictures, smart cards, memory calculators, electronic dialers, phone records or documentation, tape recording cassettes, any print outs or readouts from any magnetic storage device, hand written or printed material. Catalogs[,] periodicals[,] any items commonly found in child pornographic cases.

[Id.]. As a result of execution of the warrant, officers seized a Sony notebook computer and associated equipment, an iPod, a HP Pavillion computer with camera and associated equipment, print-out of a phone number "look-up," piece of paper with this

3

victim's name and address, pieces of paper with various screen names and emails, CD-R (unknown content), Sony CPU, green file with various MySpace.com print-outs of screen names and email addresses, VHS tapes (unknown content), bottles of Astroglide, and various types of condoms.[3]  [Doc. 61, Attachment].

In support of the search warrant, Officer Suber presented the following statement of facts in her affidavit:

> The suspect in this case, Adam Lebowitz, was arrested for criminal attempt to commit aggravated child molestation and enticing a child for indecent purposes; whereas he contacted the victim from his home computer, via the internet, to send nude photos of himself and emails to discuss oral and anal sex with the victim.  Suspect stated that he was at work but when he got home, he would email the photos.  Suspect did drive to the victims [sic] house with the intentions of having sex with the victim.  Those intentions were displayed when he placed a bag with two unsealed personal lubricants and a large amount of condoms in the front passenger seat of his vehicle.  This search warrant is requested in reference to obtaining tangible evidence in crimes thus stated.

[Id.].

Additional facts will be set forth as necessary in the discussion of Defendant's contentions challenging the search warrant.

---

[3]Assorted quantities of medicines were seized "per request of Jail Nurse & Adam Lebowitz" and subsequently delivered to the jail nurse. [Doc. 61, Attachment, page 2 of 3].

## II.    Discussion

In deciding whether to sign a search warrant, the issuing judge is "'simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and the 'basis of knowledge' of persons supplying hearsay information, there is a *fair probability* that contraband or evidence of a crime will be found in a particular place.'" United States v. Jiminez, 224 F.3d 1243, 1248 (11th Cir. 2000) (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983)) (emphasis added).  In this regard, "'probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts[.]'" United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999) (quoting Gates, 462 U.S. at 232, 103 S. Ct. at 2329).  For this reason, "[c]ourts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determination." United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994) (citing Gates, 462 U.S. at 236-37, 103 S. Ct. at 2331-32; United States v. Ventresca, 380 U.S. 102, 109, 85 S. Ct. 741, 746, 13 L. Ed. 2d 684 (1965)).  In reviewing the issuance of

5

the search warrant, the undersigned must determine only that the magistrate had a "substantial basis" for concluding that probable cause existed to uphold the warrant. See Gates, 462 U.S. at 238, 103 S. Ct. at 2331; see also Massachusetts v. Upton, 466 U.S. 727, 728, 104 S. Ct. 2085, 2085, 80 L. Ed. 2d 721 (1984) (per curiam).

Additionally, the Supreme Court has warned lower courts of the error of "not consider[ing an officer's] affidavit in its entirety" and "judging bits and pieces of information in isolation." Upton, 466 U.S. at 732, 104 S. Ct. at 2088. In United States v. Dickey-Bey, 393 F.3d 449, 454 (4th Cir. 2004), the Fourth Circuit Court of Appeals rejected the lower court's finding that the facts did not establish probable cause stating: "Although it might sometimes prove useful to conduct a *separate* analysis of each fact presented and to determine whether it contributes to a finding of probable cause, such a fractured approach in this case led, as it often does, to an aggregation of individual conclusions of insufficiency, prompting the court to conclude that the overall conduct was seemingly innocent activity." Accordingly, the validity of the warrant is considered based on the totality of the circumstances. See Brundidge, 170 F.3d at 1352.

As noted, Defendant attacks the DeKalb County search warrant alleging that (a) the affidavit contained material and reckless falsehoods and omissions; (b) that the

AO 72A
(Rev.8/82)

warrant lacked probable cause to search Defendant's residence; (c) that the list of items to be seized was over broad; and (d) that the good faith exception did not apply due to these shortcomings. [Doc. 54].

### a. <u>Franks</u> Challenge

A challenge to a search warrant on the grounds of falsity or reckless statements in the supporting affidavit is handled pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). In <u>Franks</u>, the Supreme Court held that where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a search warrant affidavit, and if the allegedly false statement was necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request to determine admissibility of the fruits of the search. <u>Franks</u>, 438 U.S. at 171-72, 98 S. Ct. at 2684-85. <u>Franks</u> also applies when the "misinformation" involves omissions from the affidavit "'made intentionally or with a reckless disregard for the accuracy of the affidavit.'" <u>Madiwale v. Savaaiko</u>, 117 F.3d 1321, 1326-27 (11th Cir. 1997) (quoting <u>United States v. Martin</u>, 615 F.2d 318, 329 (5th Cir. 1980)). However, "[o]missions that are not reckless, but are instead negligent . . . or insignificant and immaterial, will not invalidate a warrant. . . . Indeed, even intentional

7

or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." Id. at 1327 (citations omitted). Defendant bears the burden to present evidence of intentional or reckless omission of material information from the affidavit. See United States v. Burston, 159 F.3d 1328, 1333 (11ᵗʰ Cir. 1998).

To mandate a Franks evidentiary hearing,

> the defendant's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

Franks, 438 U.S. at 171-72, 98 S. Ct. at 2684-85; see also United States v. Arbolaez, 450 F.3d 1283, 1294 (11ᵗʰ Cir. 2006) (same); O'Ferrell v. United States, 253 F.3d

8

1257, 1267 (11th Cir. 2001) ("To prevail in a <u>Franks</u> challenge one must establish (1) that information contained in an affidavit was untrue, (2) that inclusion of the untrue information was either deliberate or in 'reckless disregard for the truth,' and (3) that the untrue information was an essential element of the probable cause showing relied upon by the judicial officer in issuing the search warrant.") (citation omitted).

Defendant asserts that the affiant recklessly included in the affidavit the false statement that Defendant used his home computer, that she recklessly omitted from the affidavit information about a telephone call from his office to the victim, that she recklessly failed to conduct further investigation, therefore, omitting from the affidavit the results of that investigation, and that she recklessly omitted from the affidavit information about a telephone call and web page concerning the victim's age. [Doc. 54 at 10-14]. However, Defendant has not carried his burden of making a substantial preliminary showing, accompanied by the requisite offer of proof, that the affiant either made "a false statement knowingly and intentionally, or with reckless disregard for the truth" which, if omitted from the affidavit would have negated probable cause, <u>Franks</u>, 438 U.S. at 171-72, 98 S. Ct. at 2684-85, or omitted from the affidavit information "'intentionally or with a reckless disregard for the accuracy of the

9

affidavit[,]'" <u>Madiwale</u>, 117 F.3d at 1326-27, which, if included in the affidavit, would have negated probable cause.

Defendant's first allegation of recklessly false information in the affidavit focuses on the affiant's statement that Defendant "contacted the victim from his home computer[.]" [Doc. 54 at 10]. Defendant argues that this statement is false and that the proof of the falsehood is found in the affidavit itself because the affiant also "stated that [Defendant] was at work[.]" [<u>Id.</u>]. Therefore, Defendant contends, the language referencing his home computer must be stricken from the affidavit negating any connection with Defendant's residence in the affidavit. [<u>Id.</u>]. Defendant's argument rests on "judging bits and pieces of information [in the affidavit] in isolation[,]" which the Supreme Court advised constitutes error, <u>Upton</u>, 466 U.S. at 732, 104 S. Ct. at 2088, and not, quite frankly, fully and fairly recounting the affiant's factual statement about use of Defendant's home computer. The complete statement reads: "whereas he contacted the victim from his *home computer*, via the internet, to send nude photos of himself and emails to discuss oral and anal sex with the victim. Suspect stated that *he was at work but when he got home, he would email the photos*." [Government's Response, Attachment A]. While Defendant stated that he was at work when he contacted the victim, he further stated that when he arrived home, he emailed to the

10

victim the aforementioned photographs, with a reasonable inference being, from his home computer. Based on the un-redacted fact statement, there is no internal conflict in the affidavit. The court finds that Defendant's argument on this alleged reckless false statement is not persuasive and, in fact, borders on the frivolous.[4]

Defendant's next <u>Franks</u>' allegation also flows from his parsing of the language in the affidavit as just discussed. Defendant points to the omission from the affidavit of a recorded telephone call on October 31, 2006, at 12:02 p.m., between Defendant and the victim which apparently was made from Defendant's office, that is, at the hospital. Defendant asserts that this is a reckless omission from the affidavit because the information establishes that Defendant was not at his home when he contacted the victim. [Doc. 54 at 10-11]. To the contrary, this information corroborates part of the facts in the affidavit, that is, that Defendant contacted the victim when *"he was at work"* but neither contradicts nor undermines the second part of that statement, *"but when he got home, he would email the photos."* [Government's Response, Attachment

---

[4]The court also notes that because the magistrate was provided with the full statement, including what Defendant contends was information contradicting use of his home computer, this court simply cannot find that there was any intent to mislead the magistrate on the facts supporting probable cause. The magistrate had all of the information to weigh when deciding whether to issue the warrant.

AO 72A
(Rev.8/82)

A].  Again, Defendant's less than straightforward reading of the affidavit in an attempt to support his argument of a <u>Franks</u>' violation renders his claim meritless.

As a third challenge to the affidavit, Defendant contends that the affiant's omission of the facts that the officer seized from his vehicle a Sony Clio (which he contends is capable of sending emails and photographs, but for which contention he offers no proof) and that the officer "purposely avoided searching" that device before seeking the search warrant constitutes <u>Franks</u>' violations.  [Doc. 54 at 11].  Defendant argues that it was "reckless" to state in the affidavit that Defendant's home computer was used when the Sony Clio might have been used to make the contacts with the victim.  Defendant further contends that if the magistrate had known of the discovery of the Sony Clio, the magistrate would not have signed the warrant without demanding the results of a search of that device.  [<u>Id.</u> at 11-12].  Again, Defendant makes no offer of proof to support such speculative mind-reading.  In a similar vein, Defendant asserts that the affiant recklessly failed to obtain internet service records linked to Defendant's on-line access with the victim before obtaining the search warrant.  Defendant points out that receipt of this information *after* the search warrant was obtained and executed indicated that the contacts were not from Defendant's residence.  [<u>Id.</u> at 12-13].  Defendant's contentions are not sufficient to raise a <u>Franks</u>' issue.

AO 72A
(Rev.8/82)

Courts have uniformly rejected defense arguments that further investigation should have been conducted to either corroborate or to negate the information in the affidavit or else the search warrant lacks probable cause. <u>See, e.g.</u>, <u>United States v. Shields</u>, 458 F.3d 269, 280 (3rd Cir. 2006) (rejecting the defendant's contention that affidavit lacked probable because FBI could have conducted more investigation, the court stated that "[w]hether the FBI could have provided more information is not the benchmark," the question is whether the "valid information it supplies satisfies the 'fair probability' standard"); <u>United States v. Gourde</u>, 440 F.3d 1065, 1072-73 (9th Cir. 2006) (en banc) (finding that the defendant's argument converted the "fair probability" standard to "a test of near certainty[,]" the court held that "<u>Gates</u>, however, does not compel the government to provide more facts than necessary to show a 'fair probability' that Gourde had committed a crime"); <u>United States v. Dale</u>, 991 F.2d 819, 844 (D.C. Cir. 1993) (rejecting the defendant's argument that probable cause "requires an officer to exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence"). The question in this case is not whether further investigation would have corroborated the statement in the affidavit that Defendant used his home computer but whether the affidavit's factual statements,

13

based on facts known to the affiant at that time, establish a "fair probability" that the home computer was used to contact the victim.

Likewise, courts have rejected defense arguments that failure to conduct such investigations constitutes a reckless disregard for the truth as required to satisfy the Franks' test. In Gourde, the defendant, who was charged with child pornography, raised a Franks' challenge to the affidavit in support of a search warrant for his home. He contended that the agents had access to and could have searched the computer with which he had communicated to allegedly obtain the illegal materials to determine if he had actually downloaded the materials. The defendant contended that the failure to conduct this investigation before obtaining the search warrant was "conscious avoidance" by the agents. Gourde, 440 F.3d at 1073 n.5. The court first found that the defendant's claim about the agents' conduct "is pure speculation." Id. Similarly, in this case, Defendant Lebowitz's claim that the officer "purposely" failed to examine the Sony Clio or to obtain internet records is pure speculation made without any offer of proof and fails the second element of the Franks' test, that is, proof that the officer's actions were reckless or deliberate. The court in Gourde then stated that whether the agents could have verified Gourde's downloads was the wrong question and that the "benchmark is not what the FBI 'could have' done[,]" because "[a]n affidavit may

14

support probable cause even if the government fails to obtain potentially dispositive information." Id. (citing, e.g., United States v. Miller, 753 F.2d 1475, 1481 (9th Cir. 1985) (finding that affidavit supported probable cause even though officers failed to take simple steps to independently verify information); United States v. Ozar, 50 F.3d 1440, 1446 (8th Cir. 1995) ("'[T]he magistrate judge erred in focusing his Franks v. Delaware analysis on what the FBI could have learned with more investigation. . . .'"); Dale, 991 F.2d at 844 (stating that "'failure to investigate is not evidence of an affiant's reckless disregard for the truth'")). Speculation about what the officer might have done or should have done to confirm the information in her affidavit does not establish a Franks' violation, even if that further investigation might have negated probable cause.

Additionally, the fact that Defendant was found in possession of a device which Defendant argues could have been the means by which he contacted the victim instead of his home computer, even if included in the affidavit, would not have negated probable cause. See, e.g., United States v. Terry, 522 F.3d 645, 649 (6th Cir. 2008) (rejecting claim that the search warrant for his home computer lacked probable cause because the defendant could have possibly downloaded the illegal materials onto any computer with an internet access and no direct evidence linked downloads to home

15

computer, the court found that existence of "other possibilities" did not negate the "fair probability" that the home computer was used to access the materials); United States v. Ogden, 2008 WL 2247074, at *10 (W.D. Tenn. May 28, 2008) (court disagreed with the defendant's contention that affiant deliberately omitted the fact that he also owned a laptop computer which could have contained the child pornography not the desktop computer in his home which would have negated probable cause and stated, "[j]ust because the defendant also owned a laptop does not mean that he could not have saved any of the files at issue onto his desktop"); United States v. O'Connor, 2007 WL 2021977, at *7 (N.D. Iowa July 9, 2007) (court rejected the defendant's argument that the affidavit lacked probable cause because it was just as likely that the conduct at issue, using a web cam attached to a computer to send illicit images to a child, could have occurred at his office not his home, relying on cases holding that "probable cause is not a certainty; it requires only a probability or substantial chance that evidence may be found" and "does not require direct evidence linking a crime to a particular place") (citations and internal quotations omitted); United States v. Shackleford, 2007 WL 403627, at *7 n.3 (E.D. Ky. February 1, 2007) (rejecting the defendant's challenge, based on claim he could have changed computers or accessed the internet from outside his home, to probable cause for search of computer in his home for child pornography,

16

the court noted that the defendant's arguments were misguided because "absolute confidence in the outcome" of the search is not the question but whether circumstances indicate a "*fair probability* that evidence of a crime" will be found) (emphasis in original). If the affiant had included the fact of discovering the Sony Clio in Defendant's vehicle in the affidavit, that fact would not have negated the "fair probability" that Defendant's home computer contained evidence of the crimes being investigated.

Finally, Defendant contends that the affiant recklessly omitted from the affidavit information that he did not believe he was engaged in wrongdoing when sending the information to the victim. Defendant bases this argument on a recorded telephone call between Defendant and the victim on November 1, 2006, during which the victim advised he was 15 years old, and Defendant responded that he thought the victim was 17 years old. [Doc. 54 at 13]. In making this argument, Defendant fails to acknowledge that his alleged belated discovery that the victim was minor did not alter his plans to meet with and engage in illegal conduct with the victim on November 2, 2006. That meeting with a minor resulted in the search warrant being obtained to gather evidence concerning the crimes Defendant was charged with committing on November 2, 2006. The timing of the earlier contacts, that is, when Defendant claims

17

– based on the recorded conversation – to have thought the victim was 17, does not negate probable cause for the search. Additionally, Defendant has failed to make any showing that failing to include the recorded conversation in the affidavit was a reckless or deliberate act by the officer. The officer just as likely thought, as does this court, that the information was immaterial given the fact that Defendant continued with his plans to meet with and engage in illegal conduct with the victim, despite knowing the victim's age.

And, the victim's MySpace profile, which apparently falsely stated that the victim was born in 1985 and was in the officer's possession prior to obtaining the search warrant, has no bearing on the veracity of the fact in the affidavit that the victim was a minor. [Doc. 54 at 14]. Defendant has offered no proof that the victim was not a minor. Although Defendant attempts to twist the facts stated in the affidavit, that is, alleging that the officer "wrote the affidavit in a way that plainly suggests K.S. was known to be a minor during all of the contacts described" [Id.], to bolster his Franks' claim, the affidavit is simply not suggestive of that interpretation. Again, Defendant offers no proof that the officer acted with a reckless disregard for the truth when she omitted information from the MySpace page for the victim, especially in light of the absence of any evidence that prior to preparing the affidavit, the officer believed

18

Defendant had the MySpace information. And, based on the November 1, 2006, recorded conversation between Defendant and the victim, in which Defendant stated that he thought the victim was 17, the affiant would have no reason to believe Defendant was aware of the MySpace page. Thus, inclusion of the fact of the MySpace page would not have negated probable cause.

For all of the reasons stated, the court finds that Defendant has failed to make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included" or that material information was likewise omitted from the search warrant affidavit and that either striking the allegedly false information or including the additional information would have negated the finding of probable cause. Franks, 438 U.S. at 171-72, 98 S. Ct. at 2684-85; see also Madiwale, 117 F.3d at 1326-27.

**b.    Probable Cause for Residence**

Defendant contends that the affidavit for the search warrant fails to establish probable cause to search his residence. [Doc. 54 at 6-9]. Defendant again argues that the facts set forth in the affidavit only establish that he made contact with the victim from his office, and Defendant again argues that the October 31, 2006, recorded conversation establishes he contacted the victim from his office. [Id.]. Therefore,

Defendant argues there may be probable cause to search his office but there is no nexus for a search of his home. [Id.]. Defendant is correct that "[s]earch warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." Zurcher v. Stanford Daily, 436 U.S. 547, 555, 98 S. Ct. 1970, 1976, 56 L. Ed. 2d 525 (1978) (citations omitted). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Id. at 556, 98 S. Ct. at 1976-77. However, Defendant's argument – that the affidavit for the search warrant lacks the necessary nexus to his home – fails for the same reasons that his Franks' challenge along the same lines failed.

Defendant fails to acknowledge that the affiant's full statement about the nature and means of Defendant's contacts with the victim included contacts from both his office and his home. As noted, the affidavit states: "whereas he contacted the victim from his home computer, via the internet, to send nude photos of himself and emails to discuss oral and anal sex with the victim. Suspect stated that he was at work but when he got home, he would email the photos." [Government's Response, Attachment

A].  The existence of a recorded conversation from Defendant's office does not dilute the nexus with Defendant's home nor the "fair probability" that evidence of the crimes would be found in his home.

And, as the court noted *supra*, the existence of other locations, other computers or other means by which Defendant might have contacted the victim does not negate the necessary nexus with Defendant's home.  See Terry, 522 F.3d at 649; Ogden, 2008 WL 2247074, at *10; O'Connor, 2007 WL 2021977, at *7; Shackleford, 2007 WL 403627, at *7 n.3.  The affidavit establishes a "fair probability" that evidence of the crimes for which Defendant was arrested would be located in his residence.

Defendant also argues that the affidavit fails to establish that there is probable cause to search anywhere for evidence of any crime.  In making this argument, Defendant reads the statement in the affidavit, "that he was at work but when he got home, he would email the photos[,]" as events that will be occurring in the future - not an accounting of past events.  [Doc. 54 at 6-7].  This is frankly such a convoluted reading of the language in the affidavit that it does not deserve much, if any, attention.  The court does not interpret the statement as Defendant contends.  In light of the fact that it is apparent that Defendant made the statement to the affiant about his contacts with the victim after being arrested at the victim's residence, the only reasonable

21

inference and reading of the statement is in the past tense.  Why in the world would Defendant be expressing to the officer what he intended to do in the future to contact the victim after having been arrested for past and current contacts?  He would not, and the magistrate reviewing the affidavit would not infer that he would be making statements about future activities with that victim.

The affidavit for the search warrant establishes a sufficient nexus with Defendant's residence.

### c.       Over Breadth in Description of Items to be Seized

Defendant next argues that the affidavit for the search warrant fails to establish probable cause for the seizure of most of the items listed in the warrant.  Defendant specifically points to the warrant's authorization to seize:  "Catalogs[,] periodicals[,] any items commonly found in child pornographic cases." [Doc. 54 at 4; Government's Response, Attachment A].  Based on the alleged lack of probable cause, Defendant contends that the warrant "authorized indiscriminate rummaging through Dr. Lebowitz's home." [Id.].

"'In order for a search to be reasonable, the warrant must be specific.  Specificity has two aspects:  particularity and breadth.  Particularity is the requirement that the warrant must clearly state what is sought.  Breadth deals with the requirement

22

that the scope of the warrant be limited by the probable cause on which the warrant is based.'" United States v. Maali, 346 F. Supp. 2d 1226, 1239 (M.D. Fla. 2004) (quoting In re Grand Jury Subpoenas Dated December 10, 1987, 926 F.2d 847, 856-57 (9th Cir. 1991)). In this case, Defendant is only challenging the breadth of the warrant. "'The scope of the warrant, and the search, is limited by the extent of probable cause. . . . [P]robable cause must exist to seize all items of a particular type described in the warrant' and '[t]hus, the concept of breadth may be defined as the requirement that there be probable cause to seize the particular thing named in the warrant.'" Id. (citation omitted); see also United States v. Smith, 424 F.3d 992, 1004 (9th Cir. 2005) ("The purpose of the breadth requirement is to limit the scope of the warrant 'by the probable cause on which the warrant is based.'") (citation omitted). The breadth requirement, therefore, prevents "'general, exploratory rummaging in a person's belongings.'" Smith, 424 F.3d at 1004 (citation omitted).

Defendant contends, as noted, that the list of items to be seized is over broad, especially as to the authorization to seize catalogs and periodicals and items in child pornography cases. Defendant contends that the warrant "at most justif[ies] a search for digital or other storage media units containing copies of Dr. Lebowitz's communications with K.S." [Doc. 54 at 4-5]. After a review of the list set forth on the

face of the warrant, the court concludes that the bulk of those items falls within the category of digital or storage media units, or items of that type, which could reasonably contain evidence of the offenses specified on the face of the warrant: "enticing a child for indecent purposes, O.C.G.A. § 16-6-5, and child molestation aggravated injury, O.C.G.A. § 16-6-4." [Government's Response, Attachment A]. The affidavit supported a probable cause finding that Defendant committed these offenses for which he was arrested through contacts with the victim over the internet and by telephone. And, Defendant sent photographs in the course of his contacts with the victim. Accordingly, the category of items falling within the scope of the charged offenses includes: ". . . computer(s), computer programs[,] external storage units, cables components (mouse, key board, scanner, monitor, printer, hard drive, CD rom drive, DVD rom drive, modem)[,] CD's, floppy disk[,] any "internet" service provider or online service, camera(s), video equipment, any photographic form, slides, prints, negatives, . . . smart cards, memory calculators, electronic dialers, phone records or documentation, tape recording cassettes, any print outs or readouts from any magnetic storage device. . . ." [Id.]. The court also finds within the scope of probable cause for the warrant evidence of the identified crimes as "hand written or printed material." [Id.]. No reasonable interpretation of the scope of the probable cause for the search

24

would limit the search to only electronic record-keeping or documentation.  See United States v. Beckett, 544 F. Supp. 2d 1346, 1350-51 (S. D. Fla. 2008) (finding that "[a]gents are entitled to seize documents if the warrant lists functionally equivalent documents[,]" and that "[t]he seizure of a specific item characteristic of a generic class of items defined in the warrant did not constitute an impermissible general search").

The court also finds that probable cause to search for evidence of the identified offenses is not limited to just the contacts with the victim in this case but, instead, would reasonably extend to any evidence of commission of the crimes listed on the face of the warrant.  The magistrate issuing the warrant was authorized to draw the reasonable inference that if Defendant made the contacts as set forth in the affidavit with one victim in order to commit the charged offenses, reason indicates that there is a fair probability he has made and has evidence stored in the same locations related to making such contacts with other potential victims.  See Gourde, 440 F.3d at 1071 ("Gates supports the principle that a probable cause determination may be based in part on reasonable inferences.") (citing Gates, 462 U.S. at 240, 103 S. Ct. at 2333 ("noting that a magistrate judge may 'draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant'")); see also United States v. Khanani, 502 F.3d 1281, 1290 (11th Cir. 2007) (the court noted that "in reviewing the

25

affidavit to ascertain whether it furnished probable cause for the warrant sought, the affidavit is given a 'common sense and realistic' interpretation") (citation omitted).

However, the warrant's authorization to search for "pornographic material(s)" and for "any items commonly found in child pornographic cases" presents a closer question of whether probable cause is set forth in the affidavit to support searching for these types of items. As Defendant notes, "Even if there were reasons to infer from Dr. Lebowitz's alleged acts that he possessed contraband (and there are not), Suber's affidavit failed to articulate those reasons. It includes no statements about the agent's experience or training, for example, nor any expert opinion or other basis for connecting the crimes of arrest with a likelihood of finding child pornography in the home." [Doc. 54 at 5]. The question that the court must answer is, therefore, whether the magistrate drew a reasonable inference from the information in the warrant supporting probable cause to search in Defendant's home for evidence of Defendant's violations of enticing a child for indecent purposes and child molestation, to allow the search to extend to evidence of child pornography. Although this is a close question, the court finds that the magistrate's authorization was supported by a "fair probability" that such evidence would be found in Defendant's home.

First, "numerous courts have recognized the strong link between pedophilic behavior and possession of child pornography." United States v. Murray, 2007 WL 2332484, at *5 (E.D. Pa. August 13, 2007) (citing, e.g., United States v. Brand, 467 F.3d 179, 197 (2nd Cir. 2006) ("'a direct connection exists between child pornography and pedophilia'"); United States v. Byrd, 31 F.3d 1329, 1339 (5th Cir. 1994) ("'common sense would indicate that a person who is sexually interested in children is likely to also be inclined, i.e., predisposed, to order and receive child pornography'"); United States v. Long, 1994 WL 669538, at *11 (6th Cir. 1994); United States v. Winningham, 953 F. Supp. 1068, 1080 (D. Minn. 1996)).

In Winningham, the court upheld a search warrant authorizing the search for child pornography, which did not include a "generalized opinion [in the affidavit], that pedophiles often maintain a collection of child pornography[.]" Id. at 1079. While recognizing that most affidavits contain such opinions, the court stated "we do not find the provision of such expertise to be a necessary component to an adequate showing of probable cause." Id. The court noted that although the affidavit under consideration lacked the usual expression of opinion, "in evaluating the adequacy of probable cause, we are not to leave our common sense and practical experience at the cusp of the inquiry." Id. at 1079 n.19.

27

And, in <u>United States v. McArthur</u>, 2008 WL 481993, at *4-5 (E.D. Mo. February 19, 2008), although the affidavit lacked a statement of opinion by the affiant, the court upheld issuance of a warrant to search for child pornography evidence in the defendant's home. The defendant was arrested a few days before the warrant was issued, at a mall where an officer observed him masturbating while seated in his car. The defendant had driven to the mall with the intention of meeting an unidentified male whom he had met and communicated with on line, but who did not show up as planned. In the defendant's wallet was a computer modified photograph of a "young boy looking at and touching an adult penis." The defendant had prior arrests for sex offenses but had not registered. <u>Id.</u> at *5. Based on this information, officers obtained a search warrant for the defendant's residence seizing a computer, a pocket PC, digital cameras, floppy discs, CD/DVD, a laptop computer and assorted papers. <u>Id.</u> at *3. Although the officer obtaining the search warrant testified at a hearing "that persons interested in child pornography maintain their collections for long periods of time in secure locations, typically in their residence[,]" there is no indication that such a statement was included in the affidavit for the search warrant. <u>Id.</u> at *5. However, in upholding the warrant, the court, noted that "[i]t is well known and a fact" that such was the case and denied the motion to suppress. <u>Id.</u>

28

In <u>United States v. Sarras</u>, 2007 WL 3231797, at *5-7 (M.D. Fla. October 30, 2007), the district court summarized a court's power to reason and draw inferences from the facts in issuing search warrants. In that case, the defendant challenged a warrant authorizing the search for child pornography in his home and to seize, among other items, a computer. The facts established that the defendant had used a digital camera, stored in his home at the time, to take photographs of minors engaging in sexual acts. The defendant specifically challenged the breadth of the warrant contending that there were no facts in the warrant regarding his possession of a computer nor did the affiant offer any background, training or experience for such investigations or discuss the use of digital cameras and any link with computers. <u>Id.</u> at *6. The court rejected the defendant's over breadth argument on the lack of detail regarding the affiant's computer experience and the transfer of images from the camera to a computer. Noting such detail was not necessary, the court stated:

> Direct evidence linking the place to be searched to the crime is not required for the issuance of a search warrant. . . . Instead, probable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime. . . . A court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense. . . .

Id. at *7 (citations and internal quotations omitted). The court concluded, rejecting the defendant's over breadth argument, by stating: "[T]he purpose of a digital camera is to take digital photographs, and these photographs are designed to be viewed, stored and often transmitted via a computer. A common sense reading of the affidavit supports this reasonable inference." Id. at 8.

Likewise, in this case, based on the well known and recognized links between pedophilic behavior, which Defendant Lebowitz's conduct evidenced, and possession of child pornography by such individuals in secure and safe locations, such as a residence, the magistrate was authorized in drawing the reasonable inference that one charged with the crimes set forth in the search warrant would be in possession of child pornography related materials.[5] Accordingly, this court determines that the issuing magistrate had a "substantial basis" for concluding that probable cause existed to search for all of the items listed in the warrant. See Gates, 462 U.S. at 238, 103 S. Ct. at 2331.

---

[5]Defendant relied on United States v. Isgut, 1996 WL 775064 (S.D. Fla. July 23, 1996), a decision by a magistrate judge finding that the probable cause for a search warrant was stale. Id. at *3-4. That court did not specifically address the issue before this court regarding over breadth. However, even assuming that court would not adopt the reasoning set forth *supra*, this court is neither bound by nor, more importantly, persuaded by the magistrate judge's reasoning in Isgut.

AO 72A
(Rev.8/82)

### d. Good Faith

Even if the search warrant was found to be defective on the ground that the warrant was over broad, the court finds that the "good faith" exception to the exclusionary rule should be applied in this case. In <u>United States v. Leon</u>, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), and <u>Massachusetts v. Sheppard</u>, 468 U.S. 981, 104 S. Ct. 3424, 82 L. Ed. 2d 737 (1984), the Supreme Court established a good faith exception to the exclusionary rule where officers placed reasonably objective reliance on a search warrant later determined to be defective. In <u>United States v. Accardo</u>, 749 F.2d 1477 (11th Cir. 1985), the Eleventh Circuit Court of Appeals discussed the good faith exception established by the Supreme Court. With the exception of cases "where the issuing magistrate wholly abandoned his judicial role[,]" or where "a warrant [is] based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[,]'" or where "a warrant may be so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid[,]" the good faith exception applies. <u>Id.</u> at 1480 & n.4 (citations omitted). The good faith exception "require[s] suppression 'only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an

objectively reasonable belief in the existence of probable cause.'" Id. at 1480 (quoting

Leon, 468 U.S. at 926, 104 S. Ct. at 3422). The court determined *supra* that the officer

was not dishonest or reckless in preparing the affidavit. And in deciding whether

suppression is required, the totality of the circumstances surrounding issuance of the

search warrant may be (and are here) considered. Id. at 1481.

First, the warrant issued by the magistrate was not "based on an affidavit 'so

lacking in indicia of probable cause as to render official belief in its existence entirely

unreasonable[.]'" Leon, 468 U.S. at 923, 104 S. Ct. at 3421 (citation omitted). The

affidavit supporting the search warrant was not a "'bare-bone' statement of nothing

more than conclusory allegations" which the Supreme Court in Leon found indicative

of warrants falling within the third exception to the good faith doctrine. See United

States v. Glinton, 154 F.3d 1245, 1257 (11th Cir. 1998). This affidavit presented more

than conclusory, "bare-bone" assertions for consideration by the magistrate. The

officers were, therefore, entitled to rely upon the magistrate's evaluation and

determination that "given all the circumstances set forth in the affidavit before him,

there [was] a fair probability that contraband or evidence of a crime [would] be found

in a particular place." Gates, 462 U.S. at 238, 103 S. Ct. at 2332.

AO 72A
(Rev.8/82)

Second, the officers were entitled to rely on the magistrate's conclusion that there was a "fair probability" that all of the items listed on the face of the warrant would be located in Defendant's residence. The good faith exception is applicable "'to a search conducted pursuant to an overly broad warrant.'" United States v. Haynes, 160 Fed. Appx. 940, 944 (11th Cir. 2005) (quoting United States v. Travers, 233 F.3d 1327, 1330 (11th Cir. 2000)). In fact, in Haynes, the Eleventh Circuit Court of Appeals applied the good faith exception to a search warrant which contained the same shortcoming as the warrant in this case, that is, lack of an opinion linking intent to engage in sex offenses with minors to possession of child pornography. In that case, the defendant met on-line and engaged in on-line chats with an undercover officer posing as a 14 year old female. He made arrangements to meet with the minor to engage in sexual activity. The defendant was arrested when he arrived for the meeting with the minor. Id. at 942. A search warrant was obtained for the defendant's residence, and agents seized a computer which contained images of child pornography. The defendant challenged the warrant as being over broad because it allowed for the seizure of all computers and computer hardware, including "'digital data files pertaining to the possession, receipt, or distribution of child pornography.'" Id. at 943. Although the defendant conceded, much as Defendant Lebowitz did herein, that

33

searching his home for evidence of "'enticing a minor to engage in sexual conduct'" was within the scope of probable cause, he argued that "'enticement conduct is different than child pornography, and there was not probable cause to support a search for child pornography.'" <u>Id.</u>

At a hearing on the motion to suppress, the affiant in <u>Haynes</u> testified that "'people interested in engaging in sex with a minor oftentimes have pictures of children[;]'" however, this statement was not included in the affidavit for the warrant. The Government conceded that the affiant should have explained the connection in the affidavit; but, the Government argued that "'[c]ommon sense dictates that there is a reasonable probability that an adult male who has expressed an interest in engaging in sexual activity with a minor . . . would possess child pornography or child erotica.'" <u>Haynes</u>, 160 Fed. Appx. at 943. The court responded to the arguments of the parties by concluding, "we need not decide whether the search warrant was overly broad because the evidence is admissible under the good-faith exception to the exclusionary rule. <u>Id.</u> at 944 (citing <u>Leon</u>). The court found that the "officers here clearly acted in reasonable reliance upon the warrant." <u>Id.</u>

This court also finds that the officers in this case reasonably relied on the magistrate's finding of probable cause to search for child pornography. There was

34

probable cause to believe that Defendant engaged in the charged offenses and used his home computer to make contact with the minor victim. The officer reasonably relied on the strong links between such conduct and child pornography and the well known fact that such an individual would also likely possess child pornography in his home. The warrant in this case was not "so overly broad on its face that the executing officers could not reasonably have presumed it to be valid." <u>Travers</u>, 233 F.3d at 1330. The good faith exception applies to the facts of this case, and, therefore, the evidence seized as a result of execution of the warrant should not be excluded from trial.

## III. Conclusion

For the foregoing reasons and cited authority, the court **RECOMMENDS** that Defendant's motion [Doc. 54] to suppress evidence be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case. [<u>See</u> n.1].

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

AO 72A
(Rev.8/82)

**IT IS SO RECOMMENDED AND ORDERED** this 12th day of March, 2009.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)